UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| SHYRICA WESLEY | § | |
|     Plaintiff, | § | Case No. |
| | § | |
|     vs. | § | |
| | § | |
| DALLAS COUNTY, TEXAS | § | |
|     Defendant, | § | |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, Shyrica Wesley, [hereinafter "Wesley"] sues the Defendant, Dallas County, Texas [hereinafter "County"], and alleges:

Jurisdiction and Venue

1. This action arises under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et. seq., the Civil Rights Act of 1991, 42 U.S.C. §§ 1981a, 1985, 1988.

2. Jurisdiction is invoked pursuant to 42 U.S.C. § 2000e-5(f), 28 U.S.C. §§ 1343(3) and 1343(4), and pursuant to 28 U.S.C. § 1367.

3. Costs and attorneys fees may be awarded pursuant to 42 U.S.C. § 2000e-5(k).

4. Venue properly lies in the Northern District of Texas pursuant to 28 U.S.C. § 1391(b), and 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practice was committed in this judicial district.

Conditions Precedent

5. Plaintiff, Wesley has fulfilled all conditions precedent to the institution of this action under 42 U.S.C. § 2000(e). A Notice of Right to Sue was issued by the U.S. Equal Employment Opportunity Commission on January 23, 2015, a true and correct copy of which is attached as an Exhibit "A".

## Parties

6. At all times material, Plaintiff, Wesley, was a citizen and resident of the United States, residing in Dallas County. She is an African American female. At all times material she was an employee of the Dallas County Sheriff's Department as a Deputy Sheriff.

7. At all times material, Defendant, County, was a municipal corporation pursuant to the Laws of The State of Texas and authorized to conduct business in Texas.

8. At all times material, Defendant, County, was an employer within the meaning of 42. U.S.C. § 2000e, and was engaged in an industry affecting commerce, and upon information and belief, employed more than fifteen (15) employees for each working day in each of twenty (20) or more calendar weeks in the then current or preceding calendar year.

## Facts

9. Plaintiff is entitled to relief against the Defendant upon the following facts:

A. On or about 2005, Plaintiff was hired as a Detention Service Officer with Dallas County Sheriff's Department [hereinafter "Department"]. On April 14, 2008, Plaintiff entered the Dallas County Sheriff's Academy to train as a Deputy Sheriff. On September 11, 2008, Plaintiff graduated the Dallas County Sheriff's Academy and was assigned to the Warrants Section as a Deputy Sheriff on

September 13, 2008.  Plaintiff was assigned to the "A" shift of the Warrants Section under the direct supervision of Sergeants Greg Artesi and Derek Sampson.

B. As of September 2007, the Warrants Section consisted of approximately 58 deputies comprised into two shifts characterized as "A shift" and "B Shift." The Warrants Section included two subsections: Writ Enforcement (civil) and Warrant Execution (criminal).  The Warrants Section also employed field training officers who would train new recruits to the Section.  Those deputies who were certified as field training officers were required to attend state certified training before they could train recruits in the Warrants Section. Field training officers were paid a premium of 45 minutes per day for each shift the deputy trained a recruit. The additional 45 minutes per diem was paid in compensatory time.  On early 2008, the Department created a tactical [hereinafter "SWAT"] team with deputies from the Warrant Execution Section.

C. With the institution of the SWAT team and new supervision in the Warrants Section, there began a fundamental change in the culture of the Warrants Section. In 2007, Sergeant Greg Artesi [hereinafter "Artesi"] was assigned as a first line supervisor for the A shift. Sergeant Derek Sampson was a supervisor on A shift prior to Artesi's arrival and continued to work as a supervisor on A shift. With Artesi's arrival, a culture of male domination and hostility towards females became prevalent.  Female employees were not allowed to participate in or supervise the SWAT team members.  This male dominated culture extended to entire the "A shift" personnel whereby females were harassed, subjected to disparate treatment, and their duties limited.

D. From 2007 until 2014, all female deputies assigned to the A shift of the Warrants Section formally and informally complained to the Department of gender discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended.  The Department failed to take remedial action to prevent on-going and pervasive unlawful gender discrimination and harassment.  Therefore, all

female deputies that were assigned to A shift after 2007 requested transfers away from A shift as a result of the unlawful gender discrimination and harassment to which each was subjected. Furthermore, Sergeant Derek Sampson requested a transfer to B shift in 2009 as a result of Artesi's treatment of the females on A shift and his discomfort working with Artesi. Sampson was replaced by Sergeant Patrick Scott [hereinafter "Scott"] in October of 2010.

E.  Dallas County Deputy Sheriff Cheryl Stanton [hereinafter "Stanton"], a female deputy, had been assigned to the A shift of the Warrants Section for several years before Artesi's arrival. Prior to Artesi's assignment to the A shift, Stanton had performed her duties competently and without reprisal. Stanton trained new recruits to the Warrant Section as a field training officer. After his arrival, Artesi directed verbal abuse and adverse employment actions towards Stanton because of her gender. More specifically, Artesi limited her duties by removing her field officer training status. Artesi directed profane and abusive language towards Stanton and made derogatory comments about females in her presence. Artesi referred to female captain as a "dumbshit" in the presence of several Warrants Section deputies. The female captain was thereafter transferred out of the Warrants Section and replaced with a male captain, Don Rowe [hereinafter "Rowe"].

F.  After suffering gender discrimination and verbal abuse for an extended period of time, Stanton requested a transfer from the A shift and was transferred to the B shift of Warrants Section in 2011.

G.  Dallas County Deputy Sheriff Catherine Holder (hereinafter "Holder"), a female deputy, was assigned to the A shift prior to Artesi's arrival. Artesi directed profane and abusive language towards Holder. As a result of continuing harassment, Holder file two formal grievances with the Department. She was allowed to transfer to the B shift in 2007.

H.  Dallas County Deputy Sheriff Vanessa Harris (hereinafter "Harris"), a female

COMPLAINT AND DEMAND FOR JURY TRIAL

deputy, was assigned to the A shift in 2007 and thereafters began her six month field training as a recruit. Artesi directed her male field training officers to downgrade her performance marks during her training. As a result, Harris sought the assistance of her employee association representatives who filed an Internal Affairs Division complaint alleging that Harris was subjected to discrimination and harassment because of her gender. Instead of taking corrective and remedial action against those persons engaging in gender discrimination and harassment, the Department directed that Harris' field training officers be changed. After six months Artesi notified Harris that she did not successfully completed her field training.

I.  Believing Artesi assessed her unfairly, Harris verbally complained to her female captain. Shortly thereafter, Harris learned that she was pregnant. Harris was transferred to the Personnel Section of the Department for the pendency of her pregnancy. After giving birth, Harris was reassigned to the Warrants Section. After her reassignment to Warrants, Artesi advised Harris that she must complete her six month field training again. Believing Artesi's decision was based on gender discrimination, Harris filed a formal grievance with the Department alleging gender discrimination and harassment. Harris withdrew her formal grievance in exchange for a transfer to the Bailiffs Section. The Department again failed to take remedial action to prevent further gender discrimination and harassment in the Warrants Section.

J.  Plaintiff was assigned to the A shift of the Warrants Section in September 2008. Plaintiff began her initial six month Warrants Section field training on or about September of 2009. On one occasion during her training, Artesi advised Plaintiff that she was prohibited from wearing her wedding ring while performing her duties as deputy sheriff. Departmental policy allowed the wearing of wedding rings while on duty. Male deputies were allowed to wear wedding rings while performing their duties.

K.  Plaintiff completed her field training on or about March of 2009. Plaintiff was

      then reassigned to the Release Section of the Department until July of 2009 when Plaintiff was reassigned back to the Warrants Section. In late 2009, Plaintiff along with five other deputies were temporarily reassigned to the Jail Section of the Department to assist with state mandated jail inspections. Plaintiff was reassigned back to the Warrants Section on or about July of 2010.

L.    In October 2010, Sergeant Scott was assigned to the A shift of the Warrants Section to work with Artesi. Artesi trained Scott in the duties of a Warrant Section first line supervisor. Plaintiff left on maternity leave February 17, 2011, came back from leave on March 30, 2011. Upon her return to A shift, Plaintiff was subjected to on-going unlawful gender discrimination and harassment.

M.    In January of 2012 Plaintiff was assigned as a "one-man" squad without a permanent partner by Artesi. Deputies could not serve warrants as solitary officers. Therefore, Artesi limited Plaintiff's duties as she was only allowed to perform the duties of Writ Enforcement. The duties of Writ Enforcement and Warrant Execution were normally shared equally by all Warrants Section deputies. Only when a male deputy had no partner, was Plaintiff allowed serve warrants. Plaintiff verbally reported this disparate treatment to Captain Rowe on two occasions in 2012. Rowe took no corrective or remedial action to prevent further gender discrimination and harassment.

N.    On or January 28, 2013, Artesi was offered the position of administrative sergeant for the entire Warrants Section. After accepting the position, Artesi was no longer the direct supervisor of A shift deputies. In 2013, Sergeant Hector Torres [hereinafter "Torres"] was assigned as an A shift to replace Artesi.

O.    In mid 2013, Plaintiff was a assigned a male partner Deputy Kenneth Hurd [hereinafter "Hurd"]. Hurd was verbally abusive to Plaintiff and treated her differently than male deputies. Hurd said words to the effect of, "You need to know a woman's place," and "I am sick and fucking tired of having a female as

a partner." Plaintiff reported Hurd's conduct to her supervisors Scott and Torres, but no action was taken.

P. On or about February 7, 2014 Plaintiff learned from Sampson, the Warrants Section training coordinator that there was an upcoming need for field training officers in the Warrants Section. Plaintiff then requested from Scott that she be allowed to attend Field Officer Training. Scott denied her request saying there was no need for additional field training officers.

Q. In May of 2014, Scott selected seven male deputies to attend tactical (SWAT) training course in Louisiana starting May 15, 2014. Plaintiff was not chosen even though she had previously expressed an interest in the SWAT team. Plaintiff asked Scott why she was not selected even though she had more seniority than a majority of the male deputies selected. Scott replied that he assumed Plaintiff could not arrange daycare for her minor children to attend the training.

R. On May 15, 2014, Plaintiff verbally reported to Captain Mark Howard [hereinafter "Howard"] continuing gender discrimination. Howard had replaced Captain Rowe. Specifically, Plaintiff reported Scott's denial of tactical training. Plaintiff further reported that a male officer was allowed to train with the current SWAT team, but had not yet qualified to become a member. Further Plaintiff reported to Howard that all field training officers were current members of the SWAT team and that therefore, when the SWAT team was engaged, there would be no certified deputy in the Warrants Section A shift to train recruits. Plaintiff reported that this circumstance was a violation of written departmental policies. Howard promised Plaintiff that personnel changes would be made in the coming weeks and to give him time to rectify the matter. Howard attributed the problems to former Section Chiefs Martin Suell and Gary Lindsey saying they were ineffective leaders. Howard took no corrective action against Scott nor took remedial action to prevent further gender discrimination.

S.  On June 3, 2014, Plaintiff learned that approximately 10 recruits were being assigned to the Warrants Section. Plaintiff submitted a written request to attend the next field training officer course. Scott and Torres denied Plaintiff's training request because of her disciplinary history. Plaintiff's disciplinary history consisted of a written reprimand for speeding off duty. However two male deputies with more severe disciplinary histories were allow to attend field training and train recruits.

T.  On June 5, 2014, Plaintiff reported the denial of field officer training to Captain Howard and Lieutenant Salis. Plaintiff also reported the ongoing gender discrimination and harassment. Howard directed that Plaintiff attend the field training course scheduled for that week. Howard took no corrective action again against Scott or Torres and took no remedial action to prevent further gender discrimination.

U.  After Plaintiff's June 5, 2014 meeting with Captain Howard, Scott engaged in retaliation against Plaintiff for reporting unlawful discrimination. After receiving her field training officer certification, Plaintiff was not allowed to train any recruits, thereby limiting her duties and ability to earn training wages. Plaintiff was the only certified field training officer in A shift who was prohibited from training recruits.

V.  On July 3, 2014, while in the Warrants Office, Plaintiff heard Scott advise Hurd and a recruit to begin documenting Plaintiff's conduct. Scott stated Plaintiff had complained to Captain Howard about her denial of field officer training.

W.  On July 7, 2014, Scott reassigned Plaintiff to work alone limiting her to Writ Enforcement duties only. Scott explained the reason for the reassignment is that Plaintiff's partner Hurd had complained that Plaintiff had a verbal dispute with Hurd's trainee. Without investigating the incident, Scott reassigned Plaintiff thereby limiting her duties. Scott advised Plaintiff that she could ride with other one-man squad deputies when the occasion arose.

X.  On July 9, 2014, Plaintiff requested a meeting with Lieutenant Salas and the Chief of the Warrants Section to discuss continuing gender discrimination. Lt. Salas responded by memorandum asking for more detailed information. Plaintiff again requested a face-to face meeting. Lt. Salas never responded or arranged a meeting.

Y.  On July 10, 2014 Scott allowed all A shift deputies to leave early for the day. Scott did not notify Plaintiff that she could also leave early.

Z.  On July 25, 2014, Scott and Torres held a closed door meeting for all A shift field training officers. Plaintiff was not invited to the meeting.

AA. On July 29, 2014, Scott assigned a trainee recruit to ride with a two deputies who were not certified field training officers. Scott did not assign the recruit to Plaintiff, even though Plaintiff was assigned a one-man squad was a certified field training officer.

BB. On July 29, 2014, Plaintiff filed a formal grievance with the Department alleging gender discrimination, retaliation and harassment.

CC. On August 11, 2014, Plaintiff filed a formal charge of gender discrimination, harassment and retaliation with US Equal Employment Opportunity Commission (EEOC).

DD. On August 14, 2014, all deputies assigned to the A shift were to participate in a high profile prisoner transport. The prisoner was a capital murder suspect who was to be transferred from the Dallas County Jail to Huntsville State Prison. Plaintiff was assigned to assist in the escort by following the prisoner transport vehicle in her squad car. The purpose of the transport was the prevent an aided escape attempt. The other deputies involved in the transport had a minimum of two deputies per vehicle. Two of the squads had three

        deputies per vehicle. Plaintiff was the only female and only deputy assigned as a one-man during the high profile prisoner transport. Prior to the transport and concerned that any escape attempt would target the squad car with the least amount of occupants, Plaintiff approached Scott and inquired as to why she was the only deputy to participate in the escort as a one-man. In reckless disregard for her safety, Scott did not assign a deputy from the three man squad to ride with Plaintiff during the high profile transport.

EE. On August 14, 2014 Plaintiff filed a written complaint with Captain Howard alleging that Scott had subjected her to unnecessary risk during a high profile prisoner transport that earlier that day.

FF. On August 18, 2014, Plaintiff was transferred from A shift to B shift.

GG. On 2014, Plaintiff received a right to sue letter from the EEOC. (a copy is attached as Exhibit A.)

Count I
Violation of the Civil Rights Act of 1964
Gender Discrimination

Plaintiff repeats and realleges paragraphs 1 through 9.

10. Plaintiff has been subjected to unfair treatment, verbal abuse, denied training, training wages and limitation of duties for opposing the discriminatory employment practices and for participating in the investigation into his complaints of discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended.

11. As a direct and proximate result of the foregoing, Plaintiff has suffered, is now suffering, and will continue to suffer, emotional pain and mental anguish. As a

direct and proximate result of such actions, Plaintiff has been, is being, and will in the future be deprived of income in the form of wages and of prospective benefits due to the Plaintiff solely because of the Defendant's conduct.

WHEREFORE, Plaintiff demands judgment for damages against Defendant, including but not limited to the following:

a. loss of past and future income;

b. a declaration that the acts and practices complained of herein are in violation of Title VII;

c. enjoining and permanently restraining these violations of Title VII;

d. directing Defendant to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect Plaintiff's employment opportunities;

e. compensatory damages for past, present and future mental anguish, pain and suffering, and humiliation caused by the intentional discrimination;

f. awarding Plaintiff the costs of this action together with reasonable attorney's fees, as provided by § 706(k) of Title VII, 42 U.S.C. § 2000e-5(k);

g. trial by jury; and

h. such other relief as the court deems proper.

## Count II
## Violation of Civil Rights Act of 1964

Retaliation

Plaintiff repeats and realleges paragraphs 1 through 11.

12. Plaintiff was subjected to reckless and unreasonable physical danger as well as limitation of duties, training wages and harassment in retaliation for reporting and opposing the discriminatory employment practices and for participating in the investigation into her complaints of discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended.

13. As a direct and proximate result of the foregoing, Plaintiff has suffered, is now suffering, and will continue to suffer, emotional pain and mental anguish. As a direct and proximate result of such actions, Plaintiff has been, is being, and will in the future be deprived of income in the form of wages and of prospective benefits due to the Plaintiff solely because of the Defendant's conduct.

WHEREFORE, Plaintiff demands judgment for damages against Defendant, including but not limited to the following:

a. loss of past and future income;

b. a declaration that the acts and practices complained of herein are in violation of Title VII;

c. enjoining and permanently restraining these violations of Title VII;

d. directing Defendant to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect Plaintiff's employment opportunities;

e. compensatory damages for past, present and future mental anguish, pain

          and suffering, and humiliation caused by the intentional discrimination;

f.     awarding Plaintiff the costs of this action together with reasonable attorney's fees, as provided by § 706(k) of Title VII, 42 U.S.C. § 2000e-5(k);

g.     trial by jury; and

j.     such other relief as the court deems proper.

          Respectfully submitted,

          Law Office of Jane E. Bishkin

          By: /s/: Jane E. Bishkin
          Jane E. Bishkin
          SBN: 00783663
          10000 N. Central Expressway, Suite 400
          Dallas, Texas  75231
          (214) 212-2377 Office
          (214) 343-2545 Fax
          jbish@swbell.net

          ATTORNEY FOR SHYRICA WESLEY



U.S. Department of Justice
Civil Rights Division

**CERTIFIED MAIL**
7010 0290 0000 2016 0651

950 Pennsylvania Avenue, N.W.
Karen Ferguson, EMP, PHB, Room 4239
Washington, DC 20530

January 23, 2015

APRIL 22, 2015

Ms. Shyrica M. Wesley
c/o Jane E. Bishkin, Esquire
Law Office of Jane E. Bishkin
9126 Gunnison Drive
Dallas, TX  75231

Re:  EEOC Charge Against Dallas Sheriff's Dept.
     No. 450201403147

Dear Ms. Wesley:

   Because you filed the above charge with the Equal Employment Opportunity Commission, and the Commission has determined that it will not be able to investigate and conciliate that charge within 180 days of the date the Commission assumed jurisdiction over the charge and the Department has determined that it will not file any lawsuit(s) based thereon within that time, and because you through your attorney have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq., against the above-named respondent.

   If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice.

   The investigative file pertaining to your case is located in the EEOC Dallas District Office, Dallas, TX.

   This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

Sincerely,

Vanita Gupta
Acting Assistant Attorney General
Civil Rights Division

by Karen L. Ferguson
Karen L. Ferguson
Supervisory Civil Rights Analyst
Employment Litigation Section

cc: Dallas District Office, EEOC
    Dallas Sheriff's Dept.

EXHIBIT A